## JONES v. MITCHELL.

### No. 10910.

Court of Civil Appeals of Texas. Dallas.
Jan. 16, 1932.

Rehearing Denied March 5, 1932.

Hamilton & Hamilton and Robert H. Jones, Jr., all of Dallas, for appellant.

Burgess, Burgess, Chrestman & Brundidge, of Dallas, for appellee.

JONES, C. J.

In a suit tried on change of venue from Harris county to a district court of Dallas county, appellee, W. M. Mitchell, recovered judgment against appellant, E. W. Jones, in the sum of $5,975.38, with interest from date of judgment at 6 per cent. per annum. The appeal has been duly prosecuted to this court, and the following are the facts necessary for an understanding of the issues involved:

Appellee had been engaged in the oil well drilling business since 1902. In September, 1919, a partnership was formed between appellant and appellee to carry on the business theretofore conducted by appellee. The partnership engaged extensively in the business of oil well drilling in Texas, and other states, until December 31, 1925, when the partnership was voluntarily dissolved by the parties.

On the dissolution of the firm, each of the partners was entitled to a one-half interest in the net assets, and there arose a difference between them as to their respective rights in such assets. Two audits were had of the books of the firm, and the last audit showed appellant to be indebted to appellee in the sum of $6,395.63. Appellant disputed the correctness of this audit, and claimed that appellee was indebted to him in a large sum, but, as the books were in the possession of appellee, he could not give the exact amount of such indebtedness.

This difference between the parties culminated in the filing of this suit by appellee to recover from appellant the sum of $6,395.63, shown by the auditor's report to be the amount of appellant's indebtedness to him. This sum was made up of a number of items which were described in appellee's petition. Appellant in his answer denied any indebtedness existing on any item shown in the petition, and in a cross-bill claimed that appellee was indebted to him in the sum of $25,000 made up of some items described, and other matters not described, because of lack of access to and knowledge of the books of the firm. On the issues thus made by the pleadings, the case was tried before the court, a jury being waived, and the judgment above described entered.

At the request of appellant, the court filed findings of fact and conclusions of law. These findings were excepted to on all matters in which they adversely affected appellant. On this appeal, appellant contests only the findings of the court on three separate and distinct items, which make up a part of the total amount of the judgment. Two of these relate to appellant's cross-action, in which he claimed he was entitled to certain credits not allowed by the trial court, and entitled to have either a partition or sale of the office furniture owned by the parties. Another relates to a claim that the finding of the court charges him with an indebtedness of $600 claimed by appellee in his petition, which finding is not supported by evidence. The claim is that the findings of the court adverse to his contentions on these matters are unsupported by evidence, and hence the adverse judgment entered in reference to such items has no evidence for its basis. These contentions are made through proper assignments of error and appropriate propositions of law, and are clearly presented on this appeal.

The first complaint presented by appellant relates to the refusal of the trial court to give him credit for certain voluntary payments made by him out of his individual funds, in what he alleged in his cross-action to have been a bona fide effort on his part to protect the firm's investment in certain stock in the Oak Cliff Bank & Trust Company. The undisputed evidence, in respect to this issue, shows that early in their partnership the firm became the owner of 95 shares of stock in such Oak Cliff Bank, and that these shares although owned by the firm, stood on the books of the bank in the individual name of appellant, and the certificates of stock were issued to him in the same capacity. In 1924 the Oak Cliff Bank was in financial difficulties, and the directors, of whom appellant was one, made a voluntary assessment of 100 per cent. on each share of stock to re-establish the financial soundness of the bank. Without consulting appellee, but acting for what he conceived to be to the best interest of the partnership, appellant paid the $9,500 assessment, with the result that some months thereafter the stock of such institution had increased in value to such an extent that appellant, again without consulting appellee, sold all but ten of said shares for approximately double their par value, thereby making a profit for the firm. Appellee, when informed of appellant's transaction in reference to this stock, made no objection thereto, and received his share of the profits made by the sale of the stock. This matter of the firm's investment in stock in the Oak Cliff Bank was managed exclusively by appellant during all the years of its ownership, and he was a director of the bank during this time. After the dissolution of the partnership, there was no change made in reference to the ten shares of stock standing in the name of appellant. In May, 1926, the condition of the Oak Cliff Bank had become such that the directors were informed by the banking commissioner that, unless a 100 per

cent. voluntary assessment was made on the stockholders, the bank would be closed. The bank, through its directors, made such assessment in May, 1926, and, without consulting appellee, appellant advanced $1,000 from his own funds to meet such assessment. In 1927 the same condition in reference to the bank existed and the same warning given by the state banking commissioner, and again the directors of the bank made a 100 per cent. voluntary assessment against the stockholders, and appellant advanced from his own funds, without consulting appellee, the sum of $1,000 to meet such assessment. In 1928, under similar conditions, an assessment of 80 per cent. was made against the stockholders, and again appellant, without the knowledge or consent of appellee, advanced from his own funds the sum of $800 to meet this assessment. In other words, after December 31, 1925, the date of the dissolution of the firm, appellant advanced, without the knowledge or consent of appellee, the sum of $2,800 to meet the three several voluntary assessments levied against appellant, as the holder and owner of these ten shares of stock, for the respective years of 1926, 1927, and 1928. None of these assessments placed the bank in a permanently sound financial condition, and in 1929 the Oak Cliff Bank was taken over by the Republic National Bank of Dallas, which institution took over the assets and assumed the liabilities of the Oak Cliff Bank. In order to accomplish this result, by means of which the liabilities of the Oak Cliff Bank were met, appellant, with other directors, signed a guaranty to the Republic National Bank in the sum of $4,166.67, but this liability of his is not in issue on this appeal. Appellant's testimony is that in paying these assessments he honestly believed he was working to the best interest of the partnership in trying to protect the firm's property, of the par value of $1,000, and denied that he made any of the payments in his own interest, or for the benefit of the bank, in which he was a director. The trial court allowed appellant credit for one-half of the first assessment, but denied appellant credit for one-half of the second and third assessments.

Appellant's second complaint grows out of a claim of appellee for $600, because of an alleged trade-in value of a used car owned by the firm, to the Buick Company of Dallas for a pleasure car purchased for himself. The evidence on this claim, in effect, is that an item of $600 was charged on the books against appellant because of the value allowed him on a used firm car, traded in by him for the new Buick family car. The auditor testified that he had been called upon to audit the books of the firm in the year 1922, for the purpose of an income tax report to be made by the firm, that, when he saw this item charged against appellant, he asked him about it, and he gave the explanation that it was the trade-in value of the firm's car for a car that he was

purchasing for himself, and that it was a proper charge against him. The auditor further testified that he had this item charged to "profit and loss," and that the income tax report was made in accordance therewith, and that for some two or three years thereafter the same disposition of this item was made in the income tax reports prepared by him. This item was charged on the books of the firm in Dallas that appeared to be under the supervision of appellant; appellee residing in Houston at such time. Appellant specifically denied in his testimony any such conversation with the auditor, and specifically denied that he had used a firm car for trade-in purposes in purchasing a car for himself. It is claimed that this specific and sweeping denial of appellant destroyed the probative force of the auditor's testimony in reference to the admission of appellant, alone testified to by the auditor, and that the court found this item against him without any probative evidence to support same.

Appellant's third claim is in reference to his contention that the office furniture owned and used by the firm was in the possession of appellee, and that its reasonable market value was approximately $905, and in his cross-action he prayed for either a partition of this property or its sale, and the proceeds equally distributed between himself and appellee. In reply to this pleading by appellant, appellee filed a supplemental petition, in which it is alleged that the office furniture, which the firm had used during its existence, was in part in the use and possession of appellee and in part in the use and possession of appellant; and, further, that the part in appellant's possession was in value equal to or in excess of the value of the part in appellee's possession, and, in effect, that the parties had considered this as a partition of such property. Appellant admitted on the witness stand that the portion of office furniture in his possession was equal to or in excess of the portion in appellee's possession. The court's findings on this issue is to the effect that the parties had amicably agreed to a partition of the office furniture previous to the suit, and refused appellant's prayer in reference to its partition or sale. These three complaints properly presented by appellant will be discussed in the order given above.

■ Did the trial court err in denying credit to appellant for one-half of the 1927 and 1928 assessments on the stock in the Oak Cliff Bank? On the dissolution of the partnership existing between appellant and appellee, either party could settle outstanding accounts, compromise outstanding debts due to the partnership, complete the performance of contracts previously entered into, and reduce the assets to cash or its equivalent, without any specific agreement in respect thereto, and the one so acting continues to be the agent of the other for the accomplishment of

such purposes. The liquidating partner cannot bind another partner on a new contract, nor execute notes of the partnership for the renewal of a pre-existing firm debt without the consent of the other member or members of the former firm. White v. Tudor, 24 Tex. 639, 76 Am. Dec. 126; Page on Contracts, vol. 3, § 1716, 47 C. J. 1124, § 794; 20 R. C. L. 198, p. 968. In short, after a dissolution of a partnership, none of the partners can do any act or make any disposition of the partnership property or funds in any manner inconsistent with the primary duty, then resting upon all of them, of winding up the partnership.

■■ At the time of the dissolution, appellant being in possession of the ten shares of stock in question, the duty rested upon him to protect this property from loss, provided he could do so by such means as a reasonably prudent person would have used under the same circumstances. 47 C. J. 1116. Appellant sustained a dual relation to this stock, that of joint owner with appellee and that inherent in his position as a director of the bank. As such relation carried with it a corresponding duty, hence, in addition to the duty resting on appellant as joint owner with appellee, there rested upon him also the duty as director of the bank to act for the best interest of the bank in respect to the assessments made, regardless of any private interest he might have. It can readily be seen that there might arise a conflict in interest as to what course he should pursue in reference to these assessments. Manifestly, it was for the best interest of the bank that all of the assessments be met promptly by the stockholders. It is equally manifest that a reasonably prudent person, acting solely in the interest of the joint ownership of this stock, might consider it unreasonable, and not for the best interest of the members of the former partnership, to pay out the sum of $2,800 in a futile effort to protect a $1,000 partnership investment. Unquestionably, the amount of the assessments paid and the circumstances surrounding their payments make an issue of fact as to whether appellant acted reasonably, that is, as a reasonably prudent person would have acted, in meeting all of these assessments. The trial court found that he did so act in meeting the assessment of 1926, but did not so act in meeting the assessments of 1927 and 1928. An issue is made by both parties as to the correctness of the findings of the trial court in this respect. Appellee, as to 1926 assessment, and appellant as to the 1927 and 1928 assessments. The court's findings on the three assessments rest on disputed issues of fact, and, there being ample evidence to sustain the findings of the court, all assignments of error on this matter are overruled.

■ Did the court err in charging appellant with the $600 item as the trade-in value of the firm's automobile? We think this issue presents clearly a matter of disputed evidence, and that the finding of the trial court is binding on this court. It is true that appellant positively denied that he traded in a used firm car for a new Buick passenger car for his personal use; yet the admission of appellant, as testified to by the auditor, does not rest alone on the auditor's testimony, but is corroborated by the fact that an entry was made on the books in Dallas, in line with the auditor's testimony, and, further, that the item, as entered on the books of the firm, was acted upon for income tax purposes. This corroboration takes the case out of the rule announced by the line of decisions relied upon by appellant.

■ Did the court err in refusing to partition the office furniture? The finding of the court that there had been an equitable division of the office furniture is based on an inference reasonably deducible from the existing circumstances, to wit, that, after dissolution, a portion of the furniture remained in the possession of appellee, and that another portion of the furniture remained in the possession of appellant, and that each had been using the portion in his possession since dissolution. Appellant admitted that the furniture in his possession was equal in value to the furniture in appellee's possession, and, as the effect of the judgment is to give to each the furniture in his possession, we can see no injury resulting to appellant. Under this evidence, appellant did not suffer by reason of this judgment, but it is as favorable to him as could have resulted from a formal judgment of partition. We therefore overrule this assignment of error.

Finding no reversible error in the judgment of the lower court, it is our opinion that such judgment should be affirmed, and it is so ordered.

Affirmed.

### On Motion for Rehearing.

On motion for rehearing our attention has been called to the fact that, in the statement of the case, two errors, immaterial to the decision rendered, were made in the original opinion in this case. These errors have been noted and suitable correction made in the original opinion.

Appellant complains that the trial court did not make the specific findings ascribed to it by the opinion in reference to the 1927 and 1928 assessments made against him on the stock in the Oak Cliff Bank; the matter complained of only states what the court construed to be the necessary effect of the court's findings of fact on this matter, and we adhere to the original statement as to such findings.

■■ Appellee complains that this court, in response to a proper cross-assignment of error, should have allowed interest on the

amount found in favor of appellee at the rate of 6 per cent. per annum from January 1, 1927 to the date of the judgment, and reform the judgment of lower court to this extent. We do not think the court erred in the refusal to allow such interest. This was a partnership in which each party claimed an indebtedness against the other party; we do not think there was a final accounting between them until the trial of the case. Appellee in his written argument states the rule that we think applies to this case under the facts above stated. This rule is, in the language of appellee, "interest is not allowed on partnership accounts prior to the time an accounting is had, and the balance ascertained." Prior to the trial, each party was contending the other owed him.

Both motions for rehearing are overruled.