James H. QUARLES, Appellant,

v.

STATE BAR OF TEXAS and Grievance
Committee of the State Bar of Texas, for
the 8th District, Appellees.

No. 13295.

Court of Civil Appeals of Texas.
Houston.

Oct. 2, 1958.

John C. Cutler, Houston, for appellant.

Philip E. Hamner, Asst. Gen. Counsel, State Bar of Texas, and John R. Grace, Gen. Counsel State Bar of Texas, Austin, Charles W. Bell, Houston, for appellee.

David T. Searls, President Houston Bar Ass'n and Its Officers and Directors, Houston, amicus curiae.

WERLEIN, Justice.

This suit was brought by the State Bar of Texas, an administrative agency of the Judicial Department of the State of Texas, and the Grievance Committee of the State Bar of Texas for the 8th District, appellees, against James H. Quarles, appellant, to enjoin him from committing certain alleged acts of unauthorized practice of law and barratry. Appellant denied under oath the allegations of appellees' petition, and alleged under oath that he "is a special investigator, does not and never has practiced law, does not pretend to be a lawyer, is not a runner or ambulance chaser, is not guilty of barratry as the same is defined by Texas law, does not purport to handle or settle claims, and that he is entitled to practice his trade, pro-

fession and occupation as an investigator by authority of the 14th Amendment and of the various provisions contained in the Constitution of the United States and the State of Texas." He further alleged in substance that the appellee, Grievance Committee, was illegally constituted and was engaged in a conspiracy to prohibit him from pursuing his occupation.

Appellees filed a motion for summary judgment, alleging that the pleadings together with the admissions, affidavits and exhibits attached to such motion showed there was no genuine issue as to any material fact in the case. The court granted such motion perpetually enjoining appellant from soliciting employment within the State of Texas from parties or claimants for the presentation, handling and prosecution of claims and lawsuits against other parties involved in accidents or automobile collisions, and from engaging in the unauthorized practice of law in the State of Texas; and from practicing law directly or indirectly without being licensed to do so in the State of Texas, and from sharing contingent fees with laymen or lawyers, and from holding himself out to the public as being authorized to solicit the payment of claims against other parties, and from peddling and offering legal business of claimants to attorneys which he has solicited from injured parties, and from negotiating with attorneys for the handling thereof, and from sharing in contingent fees paid for the handling of claims of other parties and in which he has no interest, and from acting as a runner or ambulance chaser, either on his own account or for attorneys, and from violating the terms and provisions of Article 430 of the Vernon's Ann.Penal Code of Texas on barratry.

From such judgment appellant has appealed to this Court, assigning as his sole Point of Error that the court erred in granting appellees' motion for summary judgment when there were no undisputed or unexplained facts upon which such judgment could be based, thereby depriving appellant of his right to a trial on the merits, contrary to the Constitutions of the United States and the State of Texas, and depriving appellant of his right to pursue a lawful occupation, contrary to said Constitutions.

The question for this Court to determine is whether or not the pleadings, exhibits, admissions and affidavits on file show that there is no genuine issue as to any material fact, and that appellees, as the moving party, are entitled to a summary judgment. Appellant contends that he has controverted by his sworn pleading and the affidavits filed by him the allegations of plaintiffs' pleading, motion for summary judgment, and the attached affidavits and exhibits, and that there are genuine issues of fact in the case. Appellees, on the other hand, contend that while many of the allegations contained in their pleadings and affidavits have been denied, there are sufficient uncontroverted facts to support and warrant the court's judgment. They also assert that the sworn general denials of appellant in his answer and affidavits do not comply with Rule 166–A(e), Texas Rules of Civil Procedure, in that the same are either not made on appellant's personal knowledge or they fail to set forth such facts as would be admissible in evidence and are more in the nature of mere conclusions than statements of fact.

It thus becomes necessary for us to review the record in order to determine whether there are uncontroverted allegations and statements of fact that will sustain the court's summary judgment.

Appellant, in testimony given by him before the Grievance Committee of District 8 of the State Bar of Texas (Exhibit A attached to appellees' motion), testified that he is not a lawyer and had never studied law; that he does personal injury or accidental injury investigative work, specializing in it; that he calls the people he represents "clients"; that it is not unusual for him to make the first contact with his prospective clients; that on several occasions he has sent cards or notices to people in hospitals whom he discovered had been injured; that he had sent a sympathy card to a lady whom he did not know who had lost her husband,

that he entered into contracts with parties and had a written form of contract calling for a 10% contingent fee to him for his investigative work; that it was to his interest that his clients collected as much money as they could; that he has appeared at the scene of accidents and given out cards; that he had entered into a contract with one Kenneth R. Bean, whom he did not know before Bean had his accident; that he tells prospective clients that he is an investigator; that he had written letters to Clark & Treadway, a law firm, and Allstate Insurance Company, advising them of his contract with Mr. Bean; that he had learned the names of people that were involved in accidents and had gone out and talked with them; that usually he would send them a card and ask them if he could help them in any way; that whenever he went out and talked to a person he would ask whether he could help them and state that he would like to help investigate the accident they were in, and that he had gone out to homes of persons and that he had learned were injured and talked with them.

The testimony of appellant, as hereinabove set out, shows the pattern which he followed in connection with his investigative work, and a course of conduct calculated to advise persons contacted of their legal rights and to encourage the prosecution of claims growing out of personal injuries and accidents.

In his affidavit attached to appellees' motion for summary judgment, Kenneth R. Bean made the following statements, which were not controverted other than by a sworn general denial, to wit: that appellant came to his (Bean's) home and introduced himself as James Quarles and told him he would like to handle his case, and stated that he (Quarles) was not exactly a lawyer, in a way he was and in a way he wasn't, that he had been through college and had everything but his license, that he had heard that he (Bean) had sustained a back injury in an automobile accident, and he himself had had a back injury, and that appellant mentioned large sums of money to him and gave the

affiant the impression that he could do the same thing for Bean as for those who received the large settlements; that Bean later hired Jim Clark to handle his case, and that thereafter appellant 'phoned Bean and told him that he was sending Clark a photostat of the contract and that he was "getting his money".

Except for the general denial in his answer, appellant did not deny any of the allegations in the affidavit of Clarence A. Glover. Said affiant stated that about the next night after his mother was injured, appellant called on him and stated that he would like to help his mother who had been injured, that she needed some help, and an attorney or some one to help her get some money from the Houston Transit Company. Appellant knew that she was hurt pretty bad; that 9 cases out of 10 did not go to court; that if it did not go into court they would not need an attorney; that he would present his information to the Houston Transit Company to prove that they were in the wrong and the case would be settled right then. He said that he had already investigated the case pretty thoroughly and that he had three witnesses who had seen the wreck. He wanted to take affiant to the hospital. Affiant told him that he had an attorney, one Donald L. McClure, and that as soon as McClure got back into town he was going to see him. Appellant said something should be done right now. Appellant went to the hospital with the affiant and on the way to the hospital mentioned various cases he had handled, and various sums of money recovered. At the hospital appellant started to talk to affiant's mother about letting him have the case, and told her that if he did not get her any money she would not owe him anything, but if he did, his share would be 10%. Appellant got affiant's mother to sign a paper. Affiant further stated that he did not know appellant when he first approached him and did not request him to come and see him concerning his mother's accident. Affiant had his own lawyer who he intended to seek advice from.

The affidavit of said Clarence A. Glover was in part corroborated by the affidavit of Euna Lee Glover, in which she stated that she was injured while riding as a passenger on a Houston Transit bus on April 3, 1957, and that the night after she was injured a man named Quarles came to the hospital with her son and that he informed her that he could "handle it himself" and that with the information he had and the witnesses he had showed that she (Mrs. Glover) had a good case, and it need not ever get into court. Appellant told her he would do all he could to help her, and that he could get her more money than if she took it to a lawyer, and that he could do as much as an attorney could for her. The foregoing statements of Mrs. Glover were uncontroverted other than by appellant's general denial.

The following portions of the affidavit of J. B. Cudd, Sr., were not denied by appellant, other than by his general sworn denial, to wit:

"About a week or ten days after the accident, a man came to see me at my home at 6606 Steubner Airline, in the afternoon. He said his name was Quarles.

"* * * He asked me if I was in the car accident. I said yes. He said he was an investigator, and he would help me out. He told me that my back is liable to be hurt permanently, and that my neck was liable to be injured too. He shook my neck and asked me if it hurt * * * He told me that he would take care of the case for me; that he would take care of everything for me. I told Quarles that the insurance man had already been to see me. Quarles said that the insurance man wasn't going to do anything."

Several days later appellant went out to see Cudd and took him to his office in the Scanlan Building. Cudd wound up in Baker's office and while there signed a contract with Baker in appellant's presence for Baker to handle the claim. Cudd had

never before had any dealings with or even known Baker. On the way home appellant stated that he brought cases to Baker. Thereafter Baker handled the claim and settled the same and received a part of the proceeds for handling it.

Appellant does not deny, other than by his general denial, the sworn statement of Lawrence Harper to the effect that on the same day that Harper sustained an accident he was visited by appellant who represented to him that he represented his (Harper's) interest. Appellant took a statement from Harper and had him sign some papers to sue the cab company.

Appellees' Exhibit "M" attached to their motion consists of the affidavit of Joseph B. Folse. Affiant stated that on or about May 8, 1957, he had received a letter addressed to the Great Southern Supply Company from James H. Quarles stating that Quarles had been employed by Larry Dale Kimball by contract dated April 29, 1957, to investigate an accident which occurred on April 19, 1957, involving one of the employees of Great Southern Supply Company, Elias Ford. The letter stated that under the terms of the contract Quarles had been conveyed a substantial interest in any claim which Kimball might have as a result of the accident. Affiant also stated that he received a copy of a letter addressed by Quarles to Helm & Jones, attorneys, reciting that Quarles had previously advised said firm by letter that he had been conveyed a substantial interest in a claim against the Great Southern Supply Company, which said firm was handling for Kimball, and that he (Quarles) had been notified that the claim had been settled without his (sic) *con*signment being taken into consideration. The letter concluded with a demand upon the law firm for the amount due Quarles under the assignment, with a threat to prosecute his claim to judgment unless he was paid within ten days.

■ To this affidavit appellant filed a counter-affidavit stating that said Exhibit

"M" in plaintiffs' motion is not a true picture of the facts expressed and does not show that he had reasons for writing said letters, and the information he had received concerning the claim of Larry B. Kimball. None of Folse's affidavit is specifically denied and the authorship of the letter is admitted in the controverting affidavit. The allegations in appellant's affidavit relating to Folse's affidavit not stating a cause of action against him are conclusions of law and, therefore, insufficient to raise issues of fact.

■ The law is well settled that an affidavit opposing a motion for summary judgment must meet the requirements of Rule 166–A(e), T.R.C.P., and that a mere general denial is insufficient. Leach v. Cassity's Estate, Tex.Civ.App., 279 S.W.2d 630, writ ref., n. r. e. See also Sparkman v. McWhirter, Tex.Civ.App., 263 S.W.2d 832, 838, error ref., where in response to affidavits refuting the truthfulness of certain charges, the cross-plaintiff merely filed a sworn denial inclusive of their pleading. The court stated:

"Appellants were not present at the sale and aforesaid sworn pleading, even if treated as an affidavit, was in the nature of hearsay and therefore not in compliance with the Rule requiring opposing affidavits to be on personal knowledge, setting forth such facts as may be admissible in evidence, showing 'affirmatively that the affiant is competent to testify to the matters stated therein.' 'An affidavit based on hearsay and statements contained in affidavits that are but mere conclusions of law are insufficient to warrant the overruling of a motion for summary judgment.' 41B Tex.Jur. p. 50; Fonville v. Southern Materials Co., Tex. Civ.App., 239 S.W.2d 885. Says Judge Stayton, Professor of Law, University of Texas, 29 Texas Law Review 688: 'But, while there are decisions to the contrary, the better reasoned cases decide that mere pleadings do not show

that there is a genuine issue of fact, and thus prevent summary judgment, but that the showing is to be made by depositions, admissions, affidavits, or like "proofs", one, some or all (Citing cases).' "

■■ We have carefully considered the pleadings in this case, the sworn motion of appellees and the affidavits attached thereto, and also the sworn answer and controverting affidavits of appellant. Giving credence to the testimony most favorable to appellant, and disregarding the evidence to the contrary, we are of the opinion that the admissions made by appellant in Exhibit "A" attached to appellees' motion for summary judgment, hereinabove referred to, together with the accumulative evidence consisting of the uncontroverted statements made in the affidavits of Kenneth R. Bean, Clarence A. Glover, Euna Lee Glover, J. B. Cudd, Sr., Lawrence Harper, and Joseph B. Folse, are sufficient to establish that appellant has been giving by word and conduct legal information and advice to persons contacted by him in regard to their legal rights, and that by word, conduct and practice he has been encouraging the prosecution of claims growing out of personal injuries and accidents. The action of the trial court in granting appellees' motion for summary judgment was warranted.

■ At the request of appellant, the court made and filed its Findings of Fact and Conclusions of Law. The court was not required to make Findings of Fact and Conclusions of Law, and the same are in no manner controlling in the instant case. See Rolfe v. Swearingen, Tex.Civ.App., 241 S.W.2d 236, Ref., n. r. e. We are of the opinion, however, that the court's Findings of Fact, with the possible exception of Findings Nos. 10, 13 and 14, are in accordance with and based upon uncontroverted facts, and that the court's Conclusions of Law are substantially correct.

■ Although appellant has not assigned the Point as error in his brief, he did in

the trial court question the authority of appellees to maintain this suit, and he now contends in his reply brief under his Special Point relating to jurisdiction that the appellees have no such justiciable interest in the matter as will permit them to enjoin appellant from committing barratry. There can be no question that appellees have an interest in the subject matter of this suit that is peculiar to them and not common to the public in general and that they are authorized to prohibit those not members of the State Bar from practicing law. The State Bar Act, Vernon's Ann.Civ.St. art. 320a–1, § 1 et seq., impliedly makes it the duty of the State Bar to enforce the provisions of the State Bar Act. Section 4 of the State Bar Act authorizes the Supreme Court to prepare and propose rules for the conduct of the State Bar. Section 1 of Article XII (formerly Sec. 16) of the Rules of the State Bar of Texas, Vernon's Ann.Civ.St. following article 320a–1, provides for the creation of grievance committees. Sec. 34 of art. XII of said Rules (formerly Sec. 35) authorizes such committees to maintain suits to prohibit the unlawful practice of law. See Hexter Title & Abstract Co., Inc., v. Grievance Committee, Fifth Congressional Dist., State Bar of Texas, 142 Tex. 506, 179 S.W.2d 946, 948, 157 A.L.R. 268. In that case Chief Justice Alexander made the following pertinent statement:

> "It is a very well established rule in this State that a plaintiff cannot maintain a suit to enjoin the violation of a criminal law unless such violation results in damage to such plaintiff or otherwise affects him in a manner peculiar to him, and not common to the public in general. Woods v. Kiersky, Tex. Com.App., 14 S.W.2d 825, 828. We believe, however, that the plaintiff in this case has an interest in the subject matter of the suit that is peculiar to it, and not common to the public in general."

■ Thus, appellees, because of their peculiar interest in the subject matter of this suit, have the right to prosecute and maintain the same to enjoin acts and conduct on the part of appellant constituting unauthorized practice of law and barratry, although such acts may violate criminal laws.

■ Appellant contends that he is not a lawyer and has never practiced law. The practice of the law is not limited to the conduct of cases in court. It embraces in general all advice to clients and all action taken for them in matters connected with the law. See Stewart Abstract Company v. Judicial Commission of Jefferson County, Tex.Civ.App., 131 S.W.2d 686, no writ history.

Although some of the charges brought against appellant have been specifically denied, there are in the record other charges supported by appellant's admissions and the uncontroverted statements of fact in some of the affidavits attached to appellees' motion sufficient to support a summary judgment against appellant.

■ Appellees do not contend, and we do not hold, that there is anything inherently wrong in the investigation business when properly conducted. The investigation of the facts of an accident or other occurrence which have given rise to the assertion of a claim or the filing of a suit does not per se constitute barratry or unauthorized practice of law, whether the investigator is paid a fixed or a contingent fee for services that he has been employed to perform. Where, however, the investigator acts for himself or others as an ambulance chaser and solicits the handling or prosecution of claims, and undertakes to advise prospective employers or clients concerning their legal rights and the prospects of settling personal injury, accident or other legal claims, thereby encouraging the assertion of prosecution of such claims or lawsuits, he steps beyond the pale of legitimate investigation and engages in the unauthorized practice of law or in acts tainted with barratry.

 The injunction granted against appellant in the court's judgment, hereinabove referred to, undertakes to enjoin the appellant from certain specific acts and generally from violating the terms and provisions of Article 430 of the Vernon's Ann. Penal Code of Texas covering barratry. The acts enjoined by the court should have some direct relation to the acts which the appellant has committed or threatens to commit, and should also be spelled out with sufficient definiteness that the appellant may know what acts and conduct he is enjoined from committing. It is clear from the record that appellant has not been guilty of all of the acts included in Article 430 of the Vernon's Ann. Penal Code of Texas, and that the injunction restraining him from barratry is entirely too broad and indefinite, and especially so since several of the provisions of said Article have reference only to attorneys at law. Since, however, appellant by his words, acts and conduct in the solicitation of legal claims, has given advice to persons in regard to their legal rights and their chances of recovery, and has also thereby encouraged litigation and the prosecution of claims for personal injuries and accidents, we are of the opinion that appellant has committed certain acts of barratry as well as unauthorized practice of law, as shown by uncontroverted evidence in the case, which warrant enjoining him from committing such acts of unauthorized practice of law and also such acts of barratry, prohibited under Article 430 of the Vernon's Ann. Penal Code of Texas.

We have concluded that the sixth paragraph of the judgment of the trial court enjoining appellant is too broad and should be reformed and changed to read as follows:

"It is, therefore, ordered, adjudged and decreed by the Court that the Defendant, James H. Quarles, be and he is hereby perpetually enjoined from, and that he shall desist and refrain from, soliciting employment within the State of Texas from parties or claimants for the presentation, handling and prosecution of claims and lawsuits against other parties involved in accidents or automobile collisions; from holding himself out to the public as being authorized to solicit the payment of claims against other parties and from peddling and offering to attorneys legal business of claimants which he has solicited from injured parties, and from negotiating with attorneys for the handling thereof; from wilfully instigating, exciting, or encouraging the bringing or prosecuting in any court of this State for his own profit of a suit in which he has no interest; from wilfully instigating, exciting, prosecuting or encouraging the bringing or prosecuting for his own profit of any claim in which he has no interest; and from seeking to obtain employment in any claim to prosecute or collect the same by means of personal solicitation of such employment or by procuring another to solicit for him employment in such claim."

The judgment of the trial court, as reformed, is affirmed.